Date:  8/27/2015
Time:  10:47 AM
Page 1 of 1

**Wyandotte County District Court**
ROA Report
Case: 2015-CV-000707
Current Judge: Constance M Alvey

User: SMEFFERD

AIA America Inc  vs.  Archer Pharmaceuticals Inc

Seller Plaintiff (Debt Collection)

| Date | | Judge |
|------|---|-------|
| 7/27/2015 | Summons: Issued on 07/28/2015; to Archer Pharmaceuticals Inc on 07/28/2015. | Constance M Alvey |
| | Plaintiff: AIA America Inc Attorney of Record Louis J Wade | Constance M Alvey |
| | PETITION ON CONTRACT/NOTE   PLE: Petition | Constance M Alvey |
| | SUMMONS   PLE: Summons | Constance M Alvey |
| 8/7/2015 | Summons: Served to Archer Pharmaceuticals Inc on 7/29/2015; Assigned to Attorney. Service Fee of $0.00. BY CERTIFIED MAIL | Constance M Alvey |
| | RETURN OF CERTIFIED MAIL SERVICE   RET: Return of Service | Constance M Alvey |
| 8/21/2015 | Request
Document title: REQUEST FOR CLERKS 14 DAY EXTENSION OF TIME TO ANSWER PLAINTIFFS PETITION
Document ID: 2604337 | Constance M Alvey |
| | Document
Document title: EXTENSION OF TIME
Document ID: 2604338 | Constance M Alvey |
| | Entry of Appearance
Document title: ENTRY OF APPEARANCE
Document ID: 2604341 | Constance M Alvey |
| 8/26/2015 | Defendant: Archer Pharmaceuticals Inc Attorney of Record Daniel L McClain | Constance M Alvey |



08/21/2015   14:35 Michele Barnett

FAX 816 520-560

FILE BY FAX

AUG 21 2015

BY

## IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS

AIA AMERICA, INC.,                        )
                                          )
        Plaintiff,                        )        Case No. 2015-CV-000707
                                          )        Division _____
v.                                        )        Chapter 60
                                          )        BY FAX
ARCHER PHARMACEUTICALS, INC. )
                                          )

### REQUEST FOR CLERK'S 14-DAY EXTENSION OF TIME TO ANSWER PLAINTIFF'S PETITION

COMES NOW Defendant Archer Pharmaceuticals, Inc., by and through counsel, pursuant to

Supreme Court Rule 113, and hereby respectfully requests that the Clerk of the District Court of

Wyandotte County, Kansas grant an extension of time from August 24, 2015 to and including

September 8, 2015.

Respectfully submitted,

Daniel 2. McClain

Daniel L. McClain    KS# 16335
THE MCCLAIN LAW FIRM, LLC
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
Tel: (816) 523-4667
Fax: (816) 523-5667
E-mail: dlm@danmcclainlaw.com

*Attorney for Defendant Archer Pharmaceuticals,*
*Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document was served via facsimile and first-class U.S. Mail, postage prepaid, this 21st day of August, 2015, upon:

R. Pete Smith, Esq.
Louis J. Wade, Esq.
McDowell Rice Smith & Buchanan P.C.
605 W. 47th Street, Suite 350
Kansas City, MO 64112
Fax: 816-753-9996
Attorneys for Plaintiff

*David Z. Miller*

An Attorney for Defendant

2

(FAX816 523 5667)   P.006/006

FILE BY FAX

AUG 21 2015

BY

## IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS

AIA AMERICA, INC.,            )
                             )
         Plaintiff,           )         Case No. 2015-CV-000707
                             )         Division _____
v.                           )         Chapter 60
                             )
ARCHER PHARMACEUTICALS, INC. )
                             )

### EXTENSION OF TIME

On application of Daniel L. McClain of The McClain Law Firm, LLC, attorney for Defendant,

said Defendant is granted an additional fourteen (14) days or until September 8, 2015 in which to

answer or otherwise respond to Plaintiff's Petition.

KATHLEEN M. COLLINS

CLERK OF THE DISTRICT COURT

By: _____

Submitted By:

_____

Daniel L. McClain    KS# 16335
THE MCCLAIN LAW FIRM, LLC
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
Tel: (816) 523-4667
Fax: (816) 523-5667
E-mail: dlm@danmcclainlaw.com

*Attorney for Defendant Archer Pharmaceuticals, Inc.*

FILED BY FAX

AUG 2 1 2015

BY _____

# IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS

AIA AMERICA, INC.,                    )
                                      )
    Plaintiff,                        )     Case No. 2015-CV-000707
                                      )     Division _____
v.                                    )     Chapter 60
                                      )     BY FAX
ARCHER PHARMACEUTICALS, INC.  )
                                      )

## ENTRY OF APPEARANCE

COMES NOW Daniel L. McClain and The McClain Law Firm, LLC and enter their

appearance for Defendant Archer Pharmaceuticals, Inc.

Respectfully submitted,

Daniel L. McClain     KS# 16335
THE MCCLAIN LAW FIRM, LLC
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
Tel: (816) 523-4667
Fax: (816) 523-5667
E-mail: dlm@danmcclainlaw.com

*Attorney for Defendant Archer Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document was served via facsimile
and first-class U.S. Mail, postage prepaid, this 21ˢᵗ day of August, 2015, upon:

R. Pete Smith, Esq.
Louis J. Wade, Esq.
McDowell Rice Smith & Buchanan P.C.
605 W. 47th Street, Suite 350
Kansas City, MO 64112
Fax: 816-753-9996
Attorneys for Plaintiff

An Attorney for Defendant

ELECTRONICALLY FILED
2015 Jul 27 PM 3:38
CLERK OF THE DISTRICT COURTS
CASE NUMBER: 2015-CV-000707

# IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS

AIA AMERICA, INC., )
)
    Plaintiff, )
)     Case No. _____
vs. )
)     Div. No. _____
ARCHER PHARMACEUTICALS, INC., )
)     Chapter 60, K.S.A.
Serve: Corporation Service Company )
2711 Centerville Rd., Ste. 400 )
Wilmington, Delaware 19808 )
)
    Defendant. )

## PETITION ON CONTRACT/NOTE

COMES NOW Plaintiff AIA America, Inc. ("Plaintiff") and for its cause of action against

Defendant Archer Pharmaceuticals, Inc., ("Defendant") states as follows:

    1. Plaintiff is an Kansas corporation, registered and in good standing in Kansas.

    2. Defendant is a Delaware corporation.

    3. Jurisdiction and venue are proper in this Court because the parties consented in paragraph

7(e) of each of the notes described below to jurisdiction and venue within Wyandotte County,

Kansas.

## ALLEGATIONS COMMON TO ALL COUNTS

    4. Alzheimer's Institute of America, Inc., a Florida corporation, entered into certain

Promissory Notes with Defendant, as more fully set forth below.

    5. In February 2015, Alzheimer's Institute of America, Inc. changed its name to AIA

America, Inc. pursuant to Florida law.

    6. In May 2015, AIA America, Inc., incorporated under Florida law, merged with AIA

America, Inc., incorporated under Kansas law, leaving Plaintiff as the sole surviving entity.

## COUNT I

    7. On or about August 14, 2009, Defendant made and entered into that certain Promissory

Note ("Note 1") for value received and in consideration of a loan in the amount of $1,000,000.00.

A true and correct copy of Note 1 is attached hereto as Exhibit A and is incorporated by reference as if fully set forth herein.

8. Note 1 provides that Defendant would repay Plaintiff the unpaid principal amount under Note 1 together with all accrued and unpaid interest in one or more installments.

9. Defendant has defaulted in the timely performance and repayment under Note 1 by failing to make the payments as described in Note 1.

10. The maturity date of Note 1 is the third anniversary of the date of Note 1, or August 14, 2012.

11. Because of Defendant's breach, Plaintiff had the option to, but did not accelerate Note 1 before the maturity date when all sums became due and owing.

12. Pursuant to Note 1, Defendant owes Plaintiff the principal sum of $1,000,000.00.

13. Pursuant to Note 1, Defendant owes Plaintiff interest at the rate of 7.000% *per annum* until maturity and at the rate of 14.000% *per annum* on all outstanding amounts thereafter, all of which is to be compounded monthly.

14. Pursuant to paragraph 7(c) of Note 1, Plaintiff is entitled to its reasonable attorney's fees and expenses in connection with collection and enforcement of Note 1.

15. As of this date, Defendant has failed to pay the sums due as required under Note 1, leaving a principal balance due in the amount of $1,000,000.00.

16. Plaintiff has demanded payment of the amounts due.

17. Defendant has failed and refused to pay or otherwise satisfy this obligation.

WHEREFORE, Plaintiff prays for judgment in Count I against Defendant in the principal sum of $1,000,000.00; plus interest in the amount of $210,191.76 accrued at the rate of 7.000% *per annum* from August 14, 2009 through August 14, 2012, compounded and included in the principal as of that time; plus interest at the rate of 14% *per annum* in the amount of $498,068.47 from August 15, 2012 to July 24, 2015, and thereafter at the rate of 14.000% *per annum* until paid in full; plus reasonable attorney's fees and court costs, including but not limited to any special process server

fees; and for such other and further relief as the Court shall deem just and proper under the circumstances.

## COUNT II

18. On or about September 1, 2009, Defendant made and entered into that certain Promissory Note ("Note 2") for value received and in consideration of a loan in the amount of $125,000.00. A true and correct copy of Note 2 is attached hereto as Exhibit B and is incorporated by reference as if fully set forth herein.

19. Note 2 provides that Defendant would repay Plaintiff the unpaid principal amount under Note 2 together with all accrued and unpaid interest in one or more installments.

20. Defendant has defaulted in the timely performance and repayment under Note 2 by failing to make the payments as described in Note 2.

21. The maturity date of Note 2 is the third anniversary of the date of Note 2, or September 1, 2012.

22. Because of Defendant's breach, Plaintiff had the option to, but did not accelerate Note 2 before the maturity date when all sums under the note became due and owing.

23. Pursuant to Note 2, Defendant owes Plaintiff the principal sum of $125,000.00.

24. Pursuant to Note 2, Defendant owes Plaintiff interest at the rate of 7.000% *per annum* until maturity and at the rate of 14.000% *per annum* on all outstanding amounts thereafter, all of which is to be compounded monthly

25. Pursuant to paragraph 7(c) of Note 2, Plaintiff is entitled to its reasonable attorney's fees and expenses in connection with collection and enforcement of Note 2.

26. As of this date, Defendant has failed to pay the sums due as required under Note 2, leaving a principal balance due in the amount of $125,000.00.

27. Plaintiff has demanded payment of the amounts due.

28. Defendant has failed and refused to pay or otherwise satisfy this obligation.

3

WHEREFORE, Plaintiff prays for judgment in Count II against Defendant in the principal sum of $125,000.00; plus interest in the amount of $26,273.97 accrued at the rate of 7.000% *per annum* from September 1, 2009 through September 1, 2012, compounded and included in the principal as of that time; plus interest in the amount of $61,214.05 from September 2, 2012 to July 24, 2015, and thereafter at the rate of 14.000% *per annum* until paid in full; plus reasonable attorney's fees and court costs, including but not limited to any special process server fees; and for such other and further relief as the Court shall deem just and proper under the circumstances.

## COUNT III

29. On or about March 1, 2010, Defendant made and entered into that certain Promissory Note ("Note 3") for value received and in consideration of a loan in the amount of $125,000.00. A true and correct copy of Note 3 is attached hereto as Exhibit C and is incorporated by reference as if fully set forth herein.

30. Note 3 provides that Defendant would repay Plaintiff the unpaid principal amount under Note 3 together with all accrued and unpaid interest in one or more installments.

31. Defendant has defaulted in the timely performance and repayment under Note 3 by failing to make the payments as described in Note 3.

32. The maturity date of Note 3 is the third anniversary of the date of Note 3, or March 1, 2013.

33. Because of Defendant's breach, Plaintiff had the option to, but did not accelerate Note 3 before the maturity date when all sums became due and owing.

34. Pursuant to Note 3, Defendant owes Plaintiff the principal sum of $125,000.00.

35. Pursuant to Note 3, Defendant owes Plaintiff interest at the rate of 7.000% *per annum* until maturity and at the rate of 14.000% *per annum* on all outstanding amounts thereafter, all of which is to be compounded monthly.

4

36. Pursuant to paragraph 7(c) of Note 3, Plaintiff is entitled to its reasonable attorney's fees and expenses in connection with collection and enforcement of Note 3.

37. As of this date, Defendant has failed to pay the sums due as required under Note 3, leaving a principal balance due in the amount of $125,000.00.

38. Plaintiff has demanded payment of the amounts due.

39. Defendant has failed and refused to pay or otherwise satisfy this obligation.

WHEREFORE, Plaintiff prays for judgment in Count III against Defendant in the principal sum of $125,000.00; plus interest in the amount of $26,273.97 accrued at the rate of 7.000% *per annum* from March 1, 2010 through March 1, 2013, compounded into the principal as of that time; plus interest in the amount of $50,711.93 from March 2, 2013 to July 24, 2015, and thereafter at the rate of 14.000% *per annum* until paid in full; plus reasonable attorney's fees and court costs, including but not limited to any special process server fees; and for such other and further relief as the Court deems just and proper under the circumstances.

*McDowell Rice Smith & Buchanan P.C.*

By: /s/ Louis J. Wade
     R. Pete Smith #7200
     Louis J. Wade  #13042
     605 W 47th Street; Ste. 350
     Kansas City, MO  64112
     (816) 960-7369AX (816) 753-9996
     Email: petesmith@mcdowellrice.com
           lwade@mcdowellrice.com
ATTORNEYS FOR PLAINTIFF
                          PC3 15-00110-0



EXHIBIT

A

# ARCHER PHARMACEUTICALS, INC.
# PROMISSORY NOTE

August 14, 2009

THIS CERTIFIES THAT, for value received, ARCHER PHARMACEUTICALS, INC., a Delaware corporation ("ARCHER"), promises to pay to ALZHEIMER'S INSTITUTE OF AMERICA, INC., a Florida corporation ("AIA"), or its assigns, transferees and successors, the principal sum of $1,000,000, plus interest on the unpaid principal balance of this Promissory Note at the rate set forth in Section 2 below (the "Note"). The outstanding principal and interest due and owing hereunder shall be due and payable on each respective Repayment Date (as defined below), with the entire remaining outstanding principal balance due and owing hereunder, together with any and all accrued and unpaid interest thereon, to be due and payable on the earlier of (i) the Maturity Date (as such term is defined in Section 2 below; or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amount otherwise becomes due and payable.

If any payment hereunder falls due on a day which is not a Business Day (which shall mean any day other than a Saturday or Sunday on which commercial banks are generally open for business in Kansas City, Kansas), the due date for such payment shall be extended to the next Business Day (and additional interest shall accrue for the period of such extension).

The following is a statement of the rights of AIA and the conditions to which this Note is subject, and to which AIA, by the acceptance of this Note, agrees:

1.      Repayment.  ARCHER shall repay the unpaid principal amount on the Note (together with all accrued and unpaid interest thereon pursuant to the terms of Section 2 below) in one or more installments as follows: within thirty (30) days after the end of each June 30 and December 31 during the term of this Note, starting on December 31, 2009 (each, a "Repayment Date"), ARCHER shall repay the outstanding principal amount hereunder in an amount equal to the greater of:

(i) the total compensation, including the value of all salary, bonuses, and benefits and perquisites and other personal benefits as such terms are used by the Securities and Exchange Commission, of ARCHER's highest-paid employee; or

(ii) the sum of:

(a)     25% of ARCHER's operating income for the six month period then ended; plus

(b)     25% of ARCHER's net income for such the month period then ended if and to the extent that net income exceeds operating income; plus

(c)     25% of any debt or equity capital raised by ARCHER during the six month period then ended;

provided, however, that ARCHER shall not have a repayment obligation under this clause if and to the extent that ARCHER would not have sufficient cash to fund its operations in the ordinary course of its business for the subsequent twelve month period after making any such repayment, ARCHER shall repay the remaining unpaid principal amount on the Note together with all accrued and unpaid interest thereon on the third anniversary of the date hereof (the "Maturity Date"). All payments received shall be applied first against costs of collection (if any), then against accrued and unpaid interest, then against principal. The principal and interest on this Note will be payable in the lawful currency of the United States of America by wire transfer of immediately available funds and without set-off or counterclaim, free and clear of and without deduction for any present or future taxes, restrictions or conditions of any nature.

2.     Interest.  Interest shall accrue on the unpaid principal balance of this Note commencing on the date hereof and continue until repayment of this Note in full at the rate of seven percent (7%) per annum. All such interest shall be payable only upon the Repayment Date or such earlier date as may be required pursuant to Section 3. Overdue principal and interest will bear interest at the rate of the lower of (a) fourteen percent (14%) per annum or (b) the highest rate permitted by applicable law (the "Default Rate"). Overdue principal and interest will be payable on demand. All interest accrued hereunder shall be calculated on the basis of a 360-day year and actual days elapsed and shall compound monthly.

3.     Events of Default.

(a)     So long as the amounts due and owing under this Note remain unpaid, each of the following will constitute an "Event of Default":

(1)     failure by ARCHER to pay the principal of this Note or the accrued interest thereon when due;

(2)     failure by ARCHER to comply with or to perform any other provision of this Note, if such failure shall continue for more than ten (10) days after the giving of written notice thereof by AIA;

(3)     the stockholders of ARCHER shall have approved any plan of liquidation or dissolution of ARCHER;

(4)     ARCHER shall become insolvent or generally fail to pay, or admit in writing its inability to pay, its debts as they become due; or ARCHER shall apply for, consent to, or acquiesce in the appointment of a trustee, receiver, sequestrate or other custodian for it or any of its property; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for ARCHER or for a substantial part of its property and is not discharged or dismissed within sixty (60) days; any bankruptcy, reorganization, liquidation or similar case or proceeding shall be commenced by or against ARCHER and, if such case or proceeding is commenced against ARCHER, it continues for sixty (60) days undismissed; or ARCHER shall take

any corporate action to authorize, or in furtherance of, any of the foregoing; or

(5)   A final judgment is rendered against ARCHER that, together with other outstanding final judgments against ARCHER, exceeds an aggregate of $100,000 and within sixty (60) days after its entry such judgment has not been discharged or its execution stayed pending appeal and within sixty (60) days after the expiration of any stay such judgment has not been discharged.

(b)   Upon the occurrence of an Event of Default under this Note pursuant to Section 3(a)(3)-(5), (1) the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto) shall become immediately due and payable without any action on the part of AIA, and ARCHER shall immediately pay to AIA all amounts due and payable with respect thereto, and (2) upon the failure of ARCHER to pay all such amounts, AIA may exercise any and all rights and remedies available to AIA.

(c)   Upon the occurrence of any other Event of Default under this Note, AIA may, at its option (1) by written notice to ARCHER, declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto), immediately due and payable regardless of any prior forbearance, and (2) upon the failure of ARCHER to pay all such amounts, exercise any and all rights and remedies available to AIA under applicable law, including, without limitation, the right to collect from ARCHER all amounts due under this Note.

4.     Representations and Warranties of ARCHER to AIA.

ARCHER hereby represents and warrants to AIA that:

(a)   Corporate Organization and Authority.   ARCHER (a) is a corporation validly existing and in good standing in the State of Delaware; and (b) has the corporate power and corporate authority to own and operate its properties and to carry on its business as now conducted.

(b)   Corporate Power.   ARCHER has all requisite corporate power to execute, deliver and issue this Note and to carry out and perform its obligations under the terms of this Note.

(c)   Authorization.   All corporate action on the part of ARCHER, its officers, directors and stockholders necessary for the authorization, issuance and delivery of this Note has been taken.   This Note constitutes legally binding and valid obligations of ARCHER enforceable in accordance with their respective terms, except to the extent that such enforcement may be subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting enforcement of creditors' rights and laws concerning equitable remedies.

(d)   No Material Adverse Change.  Since [date], there has been no material adverse change in the financial condition, operating results, assets, operations, business prospects, employee relations or customer or supplier relations of ARCHER.   For purposes of this Note, the term "material adverse change" shall mean a material adverse change to the business, financial condition, results of operations or prospects of ARCHER, taken as a whole.

(e)   Compliance with Laws.  ARCHER has not violated any material law or any governmental regulation or requirement, and ARCHER has not received written notice of any such violation.

(f)   Litigation, etc.  There are no actions, suits, proceedings, orders, investigations or claims pending or, to ARCHER's knowledge, threatened against or affecting ARCHER (or to ARCHER's knowledge, pending or threatened against or affecting any of the officers, directors or employees of ARCHER with respect to its business or proposed business activities), or pending or threatened by ARCHER against any third party, at law or in equity, or before or by any governmental department, commission, board, bureau, agency or instrumentality (including, without limitation, any actions, suit, proceedings or investigations with respect to the transactions contemplated by this Note); nor has there been any such actions, suits, proceedings, orders, investigations or claims pending against or affecting ARCHER during the past three years; ARCHER is not subject to any arbitration proceedings under collective bargaining agreements or otherwise or, to ARCHER's knowledge, any governmental investigations or inquiries (including, without limitation, inquiries as to the qualification to hold or receive any license or permit); and, to ARCHER's knowledge, there is no basis for any of the foregoing.  ARCHER is not subject to any judgment, order or decree of any court or other governmental agency.

5.   Covenants.  So long as this Note shall remain unpaid, ARCHER shall comply with the following covenants:

(a)   Maintenance of Existence.  ARCHER shall preserve and maintain its corporate existence and good standing in the states in which it does business, and qualify and remain qualified as a foreign corporation in each jurisdiction in which such qualification is required.

(b)   Maintenance of Records.  ARCHER shall keep adequate records and books of account, in which complete entries will be made in accordance with GAAP, reflecting all financial transactions.

(c)   Maintenance of Properties.  ARCHER shall maintain, keep, and preserve all of its properties (tangible and intangible) necessary or useful in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted.

(d)   Compliance with Laws.  ARCHER shall comply in all material respects with all applicable laws, rules, regulations, and orders, such compliance to include,

without limitation, paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon it or upon its property.

(e) Right of Inspection. ARCHER shall, at any reasonable time and from time to time, and following twenty-four (24) hours prior written notice, permit AIA or any agent of AIA to reasonably examine and make copies of (with the cost to ARCHER for such copies not to exceed $1,000) and abstracts from the records and books of account of, and visit the properties of, ARCHER, and to discuss the affairs, finances, and accounts of ARCHER with any of its officers and directors and ARCHER's independent accountants.

(f) Reporting Requirements. Furnish to AIA:

(1) As soon as available and in any event within forty-five (45) days after the end of each fiscal quarter of ARCHER, interim balance sheets of ARCHER as of the end of such quarter, statements of income of ARCHER for the period commencing at the end of the previous fiscal year and ending with the end of such quarter, and statements of cash flow of ARCHER for the portion of the fiscal year ended with the last day of such quarter, all in sufficient detail and stating in comparative form the respective figures for the corresponding date and period in the previous fiscal year all prepared in accordance with U.S. GAAP and reviewed by the chief financial officer of ARCHER (subject to normal year end audit adjustments);

(2) As soon as available and in any event within ninety (90) days after the end of each fiscal year of ARCHER, commencing with the fiscal year ending December 31, 2009, balance sheets of ARCHER as of the end of such fiscal year, statements of income and retained earnings of ARCHER for such fiscal year, and statements of cash flow of ARCHER for such fiscal year, with explanatory footnotes in sufficient detail acceptable to the AIA, and stating in comparative form the respective figures for the corresponding date and period in the prior fiscal year and all prepared in accordance with U.S. GAAP and as to the statements and, for the fiscal year ending December 31, 2010 and thereafter, accompanied by an opinion thereon acceptable to the AIA by independent accountants selected by ARCHER and which are acceptable to AIA; and

(3) At the time of creation or acquisition of any subsidiary, ARCHER shall cause such subsidiary to properly become a guarantor of this Note.

(g) Debt. ARCHER shall not create, incur, assume, or suffer to exist any debt, except:

(1) The debt evidenced by this Note;

(2)     Indebtedness arising out of the Agreement for Consideration and Royalty Payments Paid to Alzheimer's Institute of America, Inc.;

(3)     Purchase money Indebtedness not to exceed $250,000 at any time;

(4)     Current liabilities for taxes and assessments incurred in the ordinary course of business; and

(5)     Indebtedness in respect of current accounts payable or accrued (other than for borrowed funds or purchase money obligations) and incurred in the ordinary course of business, provided that all such liabilities, accounts and claims shall be promptly paid and discharged when due or in conformity with customary trade terms.

(h)     Dividends. Upon the occurrence and during the continuance of an Event of Default, ARCHER shall not declare or pay any dividends; or purchase, redeem, retire, or otherwise acquire for value any of its capital stock now or hereafter outstanding; or make any distribution of assets to its stockholders as such whether in cash, assets, or in obligations of ARCHER; or allocate or otherwise set apart any sum for the payment of any dividend or distribution on, or for the purchase, redemption, or retirement of any shares of its capital stock; or make any distribution by reduction of capital or otherwise in respect of any shares of its capital stock.

(i)     Guaranties, etc. ARCHER shall not assume, guarantee, endorse, or otherwise be or become directly or contingently responsible or liable (including, but not limited to, an agreement to purchase any obligation, stock, assets, goods, or services, or to supply or advance any funds, assets, goods, or services, or an agreement to maintain or cause such Person to maintain a minimum working capital net worth, or otherwise to assure the creditors of any Person against loss), for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposits or collection or similar transactions in the ordinary course of business.

6.     Prepayment. ARCHER reserves the right to prepay the whole or part of the principal sum hereof at any time or from time to time, without premium or penalty.

7.     Miscellaneous.

(a)     Successors and Assigns. The rights and obligations of ARCHER and AIA, as the holder of this Note will be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

(b)     Waiver and Amendment. Any provision of this Note may be amended, waived or modified only upon the written consent of both ARCHER and AIA.

(c)     Fees and Expenses; Costs of Collection. ARCHER agrees to reimburse AIA for all out of pocket expenses of AIA and all reasonable attorneys' fees and expenses incurred by AIA in connection with the preparation, negotiation and execution of this Note (which ARCHER shall pay in full upon the date hereof and which AIA may

offset against amounts paid to ARCHER pursuant to this Note) and the collection and enforcement of this Note. Such expenses include those related to, but not limited to: (i) the administration and enforcement of this Note; (ii) any waiver or amendment of any provision of this Note; (iii) the exercise or enforcement of any of the rights, powers, or remedies of AIA under this Note at equity or at law, whether or not suit is filed; (iv) any workout, refinancing, restructuring, or reorganization of ARCHER, including reasonable attorneys' fees incurred by AIA pursuant to proceedings arising under the Bankruptcy Code or any other applicable federal or state law; and (v) disbursements, appraiser's fees and court costs in the event collection procedures are commenced by AIA.

(d)     Rights and Remedies Cumulative. The rights and remedies of AIA under this Note and as may otherwise be available at law or in equity are cumulative and concurrent and at the sole discretion of AIA may be pursued singly, successively or together and exercised as often as AIA desires.

(e)     Governing Law; Choice of Forum; Waiver of Jury Trial. This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the internal laws of the State of Kansas, excluding its choice of law or conflicts of law principles. In any action between the parties arising out of or relating to this Note or any of the transactions contemplated by this Note: (a) each party irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of either the state courts located in Wyandotte County, Kansas or the United States District Court for the District of Kansas, (b) each party irrevocably consents to service of process by first class certified mail, return receipt requested, postage prepaid, and (c) each party irrevocably waives any and all rights to a trial by jury in any legal proceeding arising out of or related to this Note or the transactions contemplated hereby.

(f)     Notices. Any notice required or permitted hereunder shall be given in writing and shall be conclusively deemed effectively given upon personal delivery or delivery by courier, or five days after deposit in the United States mail, by registered or certified mail, postage prepaid, addressed:

> (i)     if to ARCHER, to:
> Jerry L. Smith
> 2040 Whitfield Avenue
> Sarasota, Florida 34243
> Telephone: (941) 755-6644
> Fax: (941) 755-6641

> (ii)    if to AIA, to:
> William B. Schmidt
> 7837 Parallel Parkway
> Kansas City, Kansas 66112
> Telephone: (913) 831-9600
> Fax: (913) 831-2391

with a copy to:
Lee Marshall, Esq.
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2135
Fax: (314) 552-8135

or at such other address as ARCHER or AIA may designate by at least ten (10) days' advance written notice to the other party hereto.

(g)     Lost or Stolen Note. Upon receipt of evidence reasonably satisfactory to ARCHER of the loss, theft, destruction or mutilation of this Note and, in the case of loss, theft or destruction, upon receipt of an indemnity reasonably satisfactory to ARCHER (without any surety being required), or in the case of mutilation, upon surrender and cancellation of this Note, ARCHER, at its expense, will make and deliver a new Note, of like tenor, in lieu of the lost, stolen, destroyed or mutilated Note.

(h)     Severability.   If one or more provisions of this Note are held unenforceable under applicable law, the unenforceable provision will be excluded from this Note and the balance of this Note will be interpreted as if such provision were so excluded and will be enforceable in accordance with its terms. The parties to this Note agree to replace any void or unenforceable provision of this Note with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

(i)     Headings; References. All headings used herein are used for convenience only and will not be used to construe or interpret this Note. Except where otherwise indicated, all references herein to Sections refer to Sections of this Note.

(j)     Entire Agreement.   This instrument represents the entire agreement between the parties hereto with respect to this Note and its terms and conditions.

(k)     No Dilution or Impairment. ARCHER shall not amend its articles of incorporation or bylaws or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by ARCHER, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of AIA against impairment.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, ARCHER has caused this Note to be issued as of the date first written above.

ARCHER PHARMACEUTICALS, INC.,
a Delaware corporation

By:_____

Name:_____

Title:_____

9



**EXHIBIT**
**B**

# ARCHER PHARMACEUTICALS, INC.
# PROMISSORY NOTE

**September 1, 2009**

THIS CERTIFIES THAT, for value received, ARCHER PHARMACEUTICALS, INC., a Delaware corporation ("ARCHER"), promises to pay to ALZHEIMER'S INSTITUTE OF AMERICA, INC., a Florida corporation ("AIA"), or its assigns, transferees and successors, the principal sum of $125,000, plus interest on the unpaid principal balance of this Promissory Note at the rate set forth in Section 2 below (the "Note"). The outstanding principal and interest due and owing hereunder shall be due and payable on each respective Repayment Date (as defined below), with the entire remaining outstanding principal balance due and owing hereunder, together with any and all accrued and unpaid interest thereon, to be due and payable on the earlier of (i) the Maturity Date (as such term is defined in Section 2 below; or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amount otherwise becomes due and payable.

If any payment hereunder falls due on a day which is not a Business Day (which shall mean any day other than a Saturday or Sunday on which commercial banks are generally open for business in Kansas City, Kansas), the due date for such payment shall be extended to the next Business Day (and additional interest shall accrue for the period of such extension).

The following is a statement of the rights of AIA and the conditions to which this Note is subject, and to which AIA, by the acceptance of this Note, agrees:

1.  Repayment. ARCHER shall repay the unpaid principal amount on the Note (together with all accrued and unpaid interest thereon pursuant to the terms of Section 2 below) in one or more installments as follows: within thirty (30) days after the end of each June 30 and December 31 during the term of this Note, starting on December 31, 2009 (each, a "Repayment Date"), ARCHER shall repay the outstanding principal amount hereunder in an amount equal to the greater of:

    (i) the total compensation, including the value of all salary, bonuses, and benefits and perquisites and other personal benefits as such terms are used by the Securities and Exchange Commission, of ARCHER's highest-paid employee; or

    (ii) the sum of:

    (a)   25% of ARCHER's operating income for the six month period then ended; plus

    (b)   25% of ARCHER's net income for such the month period then ended if and to the extent that net income exceeds operating income; plus

    (c)   25% of any debt or equity capital raised by ARCHER during the six month period then ended;

2

provided, however, that ARCHER shall not have a repayment obligation under this clause if and to the extent that ARCHER would not have sufficient cash to fund its operations in the ordinary course of its business for the subsequent twelve month period after making any such repayment. ARCHER shall repay the remaining unpaid principal amount on the Note together with all accrued and unpaid interest thereon on the third anniversary of the date hereof (the "Maturity Date"). All payments received shall be applied first against costs of collection (if any), then against accrued and unpaid interest, then against principal. The principal and interest on this Note will be payable in the lawful currency of the United States of America by wire transfer of immediately available funds and without set-off or counterclaim, free and clear of and without deduction for any present or future taxes, restrictions or conditions of any nature.

2.   Interest. Interest shall accrue on the unpaid principal balance of this Note commencing on the date hereof and continue until repayment of this Note in full at the rate of seven percent (7%) per annum. All such interest shall be payable only upon the Repayment Date or such earlier date as may be required pursuant to Section 3. Overdue principal and interest will bear interest at the rate of the lower of (a) fourteen percent (14%) per annum or (b) the highest rate permitted by applicable law (the "Default Rate"). Overdue principal and interest will be payable on demand. All interest accrued hereunder shall be calculated on the basis of a 360-day year and actual days elapsed and shall compound monthly.

3.   Events of Default.

(a)   So long as the amounts due and owing under this Note remain unpaid, each of the following will constitute an "Event of Default":

(1)   failure by ARCHER to pay the principal of this Note or the accrued interest thereon when due;

(2)   failure by ARCHER to comply with or to perform any other provision of this Note, if such failure shall continue for more than ten (10) days after the giving of written notice thereof by AIA;

(3)   the stockholders of ARCHER shall have approved any plan of liquidation or dissolution of ARCHER;

(4)   ARCHER shall become insolvent or generally fail to pay, or admit in writing its inability to pay, its debts as they become due; or ARCHER shall apply for, consent to, or acquiesce in the appointment of a trustee, receiver, sequestrate or other custodian for it or any of its property; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for ARCHER or for a substantial part of its property and is not discharged or dismissed within sixty (60) days; any bankruptcy, reorganization, liquidation or similar case or proceeding shall be commenced by or against ARCHER and, if such case or proceeding is commenced against ARCHER, it continues for sixty (60) days undismissed; or ARCHER shall take

any corporate action to authorize, or in furtherance of, any of the foregoing; or

(5)   A final judgment is rendered against ARCHER that, together with other outstanding final judgments against ARCHER, exceeds an aggregate of $100,000 and within sixty (60) days after its entry such judgment has not been discharged or its execution stayed pending appeal and within sixty (60) days after the expiration of any stay such judgment has not been discharged.

(b)   Upon the occurrence of an Event of Default under this Note pursuant to Section 3(a)(3)-(5), (1) the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto) shall become immediately due and payable without any action on the part of AIA, and ARCHER shall immediately pay to AIA all amounts due and payable with respect thereto, and (2) upon the failure of ARCHER to pay all such amounts, AIA may exercise any and all rights and remedies available to AIA.

(c)   Upon the occurrence of any other Event of Default under this Note, AIA may, at its option (1) by written notice to ARCHER, declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto), immediately due and payable regardless of any prior forbearance, and (2) upon the failure of ARCHER to pay all such amounts, exercise any and all rights and remedies available to AIA under applicable law, including, without limitation, the right to collect from ARCHER all amounts due under this Note.

4.   Representations and Warranties of ARCHER to AIA.

ARCHER hereby represents and warrants to AIA that:

(a)   Corporate Organization and Authority. ARCHER (a) is a corporation validly existing and in good standing in the State of Delaware; and (b) has the corporate power and corporate authority to own and operate its properties and to carry on its business as now conducted.

(b)   Corporate Power. ARCHER has all requisite corporate power to execute, deliver and issue this Note and to carry out and perform its obligations under the terms of this Note.

(c)   Authorization. All corporate action on the part of ARCHER, its officers, directors and stockholders necessary for the authorization, issuance and delivery of this Note has been taken. This Note constitutes legally binding and valid obligations of ARCHER enforceable in accordance with their respective terms, except to the extent that such enforcement may be subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting enforcement of creditors' rights and laws concerning equitable remedies.

(d)     No Material Adverse Change.  Since **[date]**, there has been no material adverse change in the financial condition, operating results, assets, operations, business prospects, employee relations or customer or supplier relations of ARCHER.  For purposes of this Note, the term "material adverse change" shall mean a material adverse change to the business, financial condition, results of operations or prospects of ARCHER, taken as a whole.

(e)     Compliance with Laws.  ARCHER has not violated any material law or any governmental regulation or requirement, and ARCHER has not received written notice of any such violation.

(f)     Litigation, etc.  There are no actions, suits, proceedings, orders, investigations or claims pending or, to ARCHER's knowledge, threatened against or affecting ARCHER (or to ARCHER's knowledge, pending or threatened against or affecting any of the officers, directors or employees of ARCHER with respect to its business or proposed business activities), or pending or threatened by ARCHER against any third party, at law or in equity, or before or by any governmental department, commission, board, bureau, agency or instrumentality (including, without limitation, any actions, suit, proceedings or investigations with respect to the transactions contemplated by this Note); nor has there been any such actions, suits, proceedings, orders, investigations or claims pending against or affecting ARCHER during the past three years; ARCHER is not subject to any arbitration proceedings under collective bargaining agreements or otherwise or, to ARCHER's knowledge, any governmental investigations or inquiries (including, without limitation, inquiries as to the qualification to hold or receive any license or permit); and, to ARCHER's knowledge, there is no basis for any of the foregoing.  ARCHER is not subject to any judgment, order or decree of any court or other governmental agency.

5.      Covenants.  So long as this Note shall remain unpaid, ARCHER shall comply with the following covenants:

(a)     Maintenance of Existence.  ARCHER shall preserve and maintain its corporate existence and good standing in the states in which it does business, and qualify and remain qualified as a foreign corporation in each jurisdiction in which such qualification is required.

(b)     Maintenance of Records.  ARCHER shall keep adequate records and books of account, in which complete entries will be made in accordance with GAAP, reflecting all financial transactions.

(c)     Maintenance of Properties.  ARCHER shall maintain, keep, and preserve all of its properties (tangible and intangible) necessary or useful in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted.

(d)     Compliance with Laws.  ARCHER shall comply in all material respects with all applicable laws, rules, regulations, and orders, such compliance to include,

without limitation, paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon it or upon its property.

(e)     Right of Inspection. ARCHER shall, at any reasonable time and from time to time, and following twenty-four (24) hours prior written notice, permit AIA or any agent of AIA to reasonably examine and make copies of (with the cost to ARCHER for such copies not to exceed $1,000) and abstracts from the records and books of account of, and visit the properties of, ARCHER, and to discuss the affairs, finances, and accounts of ARCHER with any of its officers and directors and ARCHER's independent accountants.

(f)     Reporting Requirements. Furnish to AIA:

(1)     As soon as available and in any event within forty-five (45) days after the end of each fiscal quarter of ARCHER, interim balance sheets of ARCHER as of the end of such quarter, statements of income of ARCHER for the period commencing at the end of the previous fiscal year and ending with the end of such quarter, and statements of cash flow of ARCHER for the portion of the fiscal year ended with the last day of such quarter, all in sufficient detail and stating in comparative form the respective figures for the corresponding date and period in the previous fiscal year all prepared in accordance with U.S. GAAP and reviewed by the chief financial officer of ARCHER (subject to normal year end audit adjustments);

(2)     As soon as available and in any event within ninety (90) days after the end of each fiscal year of ARCHER, commencing with the fiscal year ending December 31, 2009, balance sheets of ARCHER as of the end of such fiscal year, statements of income and retained earnings of ARCHER for such fiscal year, and statements of cash flow of ARCHER for such fiscal year, with explanatory footnotes in sufficient detail acceptable to the AIA, and stating in comparative form the respective figures for the corresponding date and period in the prior fiscal year and all prepared in accordance with U.S. GAAP and as to the statements and, for the fiscal year ending December 31, 2010 and thereafter, accompanied by an opinion thereon acceptable to the AIA by independent accountants selected by ARCHER and which are acceptable to AIA; and

(3)     At the time of creation or acquisition of any subsidiary, ARCHER shall cause such subsidiary to properly become a guarantor of this Note.

(g)     Debt. ARCHER shall not create, incur, assume, or suffer to exist any debt, except:

(1)     The debt evidenced by this Note;

3113510
3170154.1

6

(2)    Indebtedness arising out of the Agreement for Consideration and Royalty Payments Paid to Alzheimer's Institute of America, Inc.;

(3)    Purchase money indebtedness not to exceed $250,000 at any time;

(4)    Current liabilities for taxes and assessments incurred in the ordinary course of business; and

(5)    Indebtedness in respect of current accounts payable or accrued (other than for borrowed funds or purchase money obligations) and incurred in the ordinary course of business, provided that all such liabilities, accounts and claims shall be promptly paid and discharged when due or in conformity with customary trade terms.

(h)    Dividends. Upon the occurrence and during the continuance of an Event of Default, ARCHER shall not declare or pay any dividends; or purchase, redeem, retire, or otherwise acquire for value any of its capital stock now or hereafter outstanding; or make any distribution of assets to its stockholders as such whether in cash, assets, or in obligations of ARCHER; or allocate or otherwise set apart any sum for the payment of any dividend or distribution on, or for the purchase, redemption, or retirement of any shares of its capital stock; or make any distribution by reduction of capital or otherwise in respect of any shares of its capital stock.

(i)    Guaranties, etc. ARCHER shall not assume, guarantee, endorse, or otherwise be or become directly or contingently responsible or liable (including, but not limited to, an agreement to purchase any obligation, stock, assets, goods, or services, or to supply or advance any funds, assets, goods, or services, or an agreement to maintain or cause such Person to maintain a minimum working capital net worth, or otherwise to assure the creditors of any Person against loss), for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposits or collection or similar transactions in the ordinary course of business.

6.    Prepayment. ARCHER reserves the right to prepay the whole or part of the principal sum hereof at any time or from time to time, without premium or penalty.

7.    Miscellaneous.

(a)    Successors and Assigns. The rights and obligations of ARCHER and AIA, as the holder of this Note will be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

(b)    Waiver and Amendment. Any provision of this Note may be amended, waived or modified only upon the written consent of both ARCHER and AIA.

(c)    Fees and Expenses; Costs of Collection. ARCHER agrees to reimburse AIA for all out of pocket expenses of AIA and all reasonable attorneys' fees and expenses incurred by AIA in connection with the preparation, negotiation and execution of this Note (which ARCHER shall pay in full upon the date hereof and which AIA may

7

3113510
3170154.1

offset against amounts paid to ARCHER pursuant to this Note) and the collection and enforcement of this Note. Such expenses include those related to, but not limited to: (i) the administration and enforcement of this Note; (ii) any waiver or amendment of any provision of this Note; (iii) the exercise or enforcement of any of the rights, powers, or remedies of AIA under this Note at equity or at law, whether or not suit is filed; (iv) any workout, refinancing, restructuring, or reorganization of ARCHER, including reasonable attorneys' fees incurred by AIA pursuant to proceedings arising under the Bankruptcy Code or any other applicable federal or state law; and (v) disbursements, appraiser's fees and court costs in the event collection procedures are commenced by AIA.

(d)    Rights and Remedies Cumulative. The rights and remedies of AIA under this Note and as may otherwise be available at law or in equity are cumulative and concurrent and at the sole discretion of AIA may be pursued singly, successively or together and exercised as often as AIA desires.

(e)    Governing Law; Choice of Forum; Waiver of Jury Trial. This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the internal laws of the State of Kansas, excluding its choice of law or conflicts of law principles. In any action between the parties arising out of or relating to this Note or any of the transactions contemplated by this Note: (a) each party irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of either the state courts located in Wyandotte County, Kansas or the United States District Court for the District of Kansas, (b) each party irrevocably consents to service of process by first class certified mail, return receipt requested, postage prepaid, and (c) each party irrevocably waives any and all rights to a trial by jury in any legal proceeding arising out of or related to this Note or the transactions contemplated hereby.

(f)    Notices. Any notice required or permitted hereunder shall be given in writing and shall be conclusively deemed effectively given upon personal delivery or delivery by courier, or five days after deposit in the United States mail, by registered or certified mail, postage prepaid, addressed:

> (i)    if to ARCHER, to:
> Jerry L. Smith
> 2040 Whitfield Avenue
> Sarasota, Florida 34243
> Telephone: (941) 755-6644
> Fax: (941) 755-6641

> (ii)   if to AIA, to:
> William B. Schmidt
> 7837 Parallel Parkway
> Kansas City, Kansas 66112
> Telephone: (913) 831-9600
> Fax: (913) 831-2391

with a copy to:
Lee Marshall, Esq.
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2135
Fax: (314) 552-8135

or at such other address as ARCHER or AIA may designate by at least ten (10) days' advance written notice to the other party hereto.

(g)     Lost or Stolen Note. Upon receipt of evidence reasonably satisfactory to ARCHER of the loss, theft, destruction or mutilation of this Note and, in the case of loss, theft or destruction, upon receipt of an indemnity reasonably satisfactory to ARCHER (without any surety being required), or in the case of mutilation, upon surrender and cancellation of this Note, ARCHER, at its expense, will make and deliver a new Note, of like tenor, in lieu of the lost, stolen, destroyed or mutilated Note.

(h)     Severability.     If one or more provisions of this Note are held unenforceable under applicable law, the unenforceable provision will be excluded from this Note and the balance of this Note will be interpreted as if such provision were so excluded and will be enforceable in accordance with its terms. The parties to this Note agree to replace any void or unenforceable provision of this Note with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

(i)     Headings; References. All headings used herein are used for convenience only and will not be used to construe or interpret this Note. Except where otherwise indicated, all references herein to Sections refer to Sections of this Note.

(j)     Entire Agreement.     This instrument represents the entire agreement between the parties hereto with respect to this Note and its terms and conditions.

(k)     No Dilution or Impairment. ARCHER shall not amend its articles of incorporation or bylaws or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by ARCHER, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of AIA against impairment.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, ARCHER has caused this Note to be issued as of the date first written above.

ARCHER PHARMACEUTICALS, INC.,
a Delaware corporation

By: _____

Name: _____ M.J MuccAN _____

Title: _____ CEO _____



# ARCHER PHARMACEUTICALS, INC.
# PROMISSORY NOTE

**March 1, 2010**

THIS CERTIFIES THAT, for value received, ARCHER PHARMACEUTICALS, INC., a Delaware corporation ("ARCHER"), promises to pay to ALZHEIMER'S INSTITUTE OF AMERICA, INC., a Florida corporation ("AIA"), or its assigns, transferees and successors, the principal sum of $125,000, plus interest on the unpaid principal balance of this Promissory Note at the rate set forth in Section 2 below (the "Note"). The outstanding principal and interest due and owing hereunder shall be due and payable on each respective Repayment Date (as defined below), with the entire remaining outstanding principal balance due and owing hereunder, together with any and all accrued and unpaid interest thereon, to be due and payable on the earlier of (i) the Maturity Date (as such term is defined in Section 2 below; or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amount otherwise becomes due and payable.

If any payment hereunder falls due on a day which is not a Business Day (which shall mean any day other than a Saturday or Sunday on which commercial banks are generally open for business in Kansas City, Kansas), the due date for such payment shall be extended to the next Business Day (and additional interest shall accrue for the period of such extension).

The following is a statement of the rights of AIA and the conditions to which this Note is subject, and to which AIA, by the acceptance of this Note, agrees:

1.    Repayment. ARCHER shall repay the unpaid principal amount on the Note (together with all accrued and unpaid interest thereon pursuant to the terms of Section 2 below) in one or more installments as follows: within thirty (30) days after the end of each June 30 and December 31 during the term of this Note, starting on December 31, 2009 (each, a "Repayment Date"), ARCHER shall repay the outstanding principal amount hereunder in an amount equal to the greater of:

(i) the total compensation, including the value of all salary, bonuses, and benefits and perquisites and other personal benefits as such terms are used by the Securities and Exchange Commission, of ARCHER's highest-paid employee; or

(ii) the sum of:

(a)    25% of ARCHER's operating income for the six month period then ended; plus

(b)    25% of ARCHER's net income for such the month period then ended if and to the extent that net income exceeds operating income; plus

(c)    25% of any debt or equity capital raised by ARCHER during the six month period then ended;

2

provided, however, that ARCHER shall not have a repayment obligation under this clause if and to the extent that ARCHER would not have sufficient cash to fund its operations in the ordinary course of its business for the subsequent twelve month period after making any such repayment. ARCHER shall repay the remaining unpaid principal amount on the Note together with all accrued and unpaid interest thereon on the third anniversary of the date hereof (the "Maturity Date"). All payments received shall be applied first against costs of collection (if any), then against accrued and unpaid interest, then against principal. The principal and interest on this Note will be payable in the lawful currency of the United States of America by wire transfer of immediately available funds and without set-off or counterclaim, free and clear of and without deduction for any present or future taxes, restrictions or conditions of any nature.

2.    Interest. Interest shall accrue on the unpaid principal balance of this Note commencing on the date hereof and continue until repayment of this Note in full at the rate of seven percent (7%) per annum. All such interest shall be payable only upon the Repayment Date or such earlier date as may be required pursuant to Section 3. Overdue principal and interest will bear interest at the rate of the lower of (a) fourteen percent (14%) per annum or (b) the highest rate permitted by applicable law (the "Default Rate"). Overdue principal and interest will be payable on demand. All interest accrued hereunder shall be calculated on the basis of a 360-day year and actual days elapsed and shall compound monthly.

3.    Events of Default.

(a)    So long as the amounts due and owing under this Note remain unpaid, each of the following will constitute an "Event of Default":

(1)    failure by ARCHER to pay the principal of this Note or the accrued interest thereon when due;

(2)    failure by ARCHER to comply with or to perform any other provision of this Note, if such failure shall continue for more than ten (10) days after the giving of written notice thereof by AIA;

(3)    the stockholders of ARCHER shall have approved any plan of liquidation or dissolution of ARCHER;

(4)    ARCHER shall become insolvent or generally fail to pay, or admit in writing its inability to pay, its debts as they become due; or ARCHER shall apply for, consent to, or acquiesce in the appointment of a trustee, receiver, sequestrate or other custodian for it or any of its property; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for ARCHER or for a substantial part of its property and is not discharged or dismissed within sixty (60) days; any bankruptcy, reorganization, liquidation or similar case or proceeding shall be commenced by or against ARCHER and, if such case or proceeding is commenced against ARCHER, it continues for sixty (60) days undismissed; or ARCHER shall take

any corporate action to authorize, or in furtherance of, any of the foregoing; or

(5) A final judgment is rendered against ARCHER that, together with other outstanding final judgments against ARCHER, exceeds an aggregate of $100,000 and within sixty (60) days after its entry such judgment has not been discharged or its execution stayed pending appeal and within sixty (60) days after the expiration of any stay such judgment has not been discharged.

(b) Upon the occurrence of an Event of Default under this Note pursuant to Section 3(a)(3)-(5), (1) the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto) shall become immediately due and payable without any action on the part of AIA, and ARCHER shall immediately pay to AIA all amounts due and payable with respect thereto, and (2) upon the failure of ARCHER to pay all such amounts, AIA may exercise any and all rights and remedies available to AIA.

(c) Upon the occurrence of any other Event of Default under this Note, AIA may, at its option (1) by written notice to ARCHER, declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon (and all other amounts due and payable with respect thereto), immediately due and payable regardless of any prior forbearance, and (2) upon the failure of ARCHER to pay all such amounts, exercise any and all rights and remedies available to AIA under applicable law, including, without limitation, the right to collect from ARCHER all amounts due under this Note.

4.   Representations and Warranties of ARCHER to AIA.

ARCHER hereby represents and warrants to AIA that:

(a) Corporate Organization and Authority. ARCHER (a) is a corporation validly existing and in good standing in the State of Delaware; and (b) has the corporate power and corporate authority to own and operate its properties and to carry on its business as now conducted.

(b) Corporate Power. ARCHER has all requisite corporate power to execute, deliver and issue this Note and to carry out and perform its obligations under the terms of this Note.

(c) Authorization. All corporate action on the part of ARCHER, its officers, directors and stockholders necessary for the authorization, issuance and delivery of this Note has been taken. This Note constitutes legally binding and valid obligations of ARCHER enforceable in accordance with their respective terms, except to the extent that such enforcement may be subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting enforcement of creditors' rights and laws concerning equitable remedies.

(d)      No Material Adverse Change. Since **[date]**, there has been no material adverse change in the financial condition, operating results, assets, operations, business prospects, employee relations or customer or supplier relations of ARCHER.    For purposes of this Note, the term "material adverse change" shall mean a material adverse change to the business, financial condition, results of operations or prospects of ARCHER, taken as a whole.

(e)      Compliance with Laws.  ARCHER has not violated any material law or any governmental regulation or requirement, and ARCHER has not received written notice of any such violation.

(f)      Litigation, etc. There are no actions, suits, proceedings, orders, investigations or claims pending or, to ARCHER's knowledge, threatened against or affecting ARCHER (or to ARCHER's knowledge, pending or threatened against or affecting any of the officers, directors or employees of ARCHER with respect to its business or proposed business activities), or pending or threatened by ARCHER against any third party, at law or in equity, or before or by any governmental department, commission, board, bureau, agency or instrumentality (including, without limitation, any actions, suit, proceedings or investigations with respect to the transactions contemplated by this Note); nor has there been any such actions, suits, proceedings, orders, investigations or claims pending against or affecting ARCHER during the past three years; ARCHER is not subject to any arbitration proceedings under collective bargaining agreements or otherwise or, to ARCHER's knowledge, any governmental investigations or inquiries (including, without limitation, inquiries as to the qualification to hold or receive any license or permit); and, to ARCHER's knowledge, there is no basis for any of the foregoing.  ARCHER is not subject to any judgment, order or decree of any court or other governmental agency.

5.      Covenants. So long as this Note shall remain unpaid, ARCHER shall comply with the following covenants:

(a)      Maintenance of Existence. ARCHER shall preserve and maintain its corporate existence and good standing in the states in which it does business, and qualify and remain qualified as a foreign corporation in each jurisdiction in which such qualification is required.

(b)      Maintenance of Records. ARCHER shall keep adequate records and books of account, in which complete entries will be made in accordance with GAAP, reflecting all financial transactions.

(c)      Maintenance of Properties. ARCHER shall maintain, keep, and preserve all of its properties (tangible and intangible) necessary or useful in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted.

(d)      Compliance with Laws. ARCHER shall comply in all material respects with all applicable laws, rules, regulations, and orders, such compliance to include,

without limitation, paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon it or upon its property.

(e) Right of Inspection. ARCHER shall, at any reasonable time and from time to time, and following twenty-four (24) hours prior written notice, permit AIA or any agent of AIA to reasonably examine and make copies of (with the cost to ARCHER for such copies not to exceed $1,000) and abstracts from the records and books of account of, and visit the properties of, ARCHER, and to discuss the affairs, finances, and accounts of ARCHER with any of its officers and directors and ARCHER's independent accountants.

(f) Reporting Requirements. Furnish to AIA:

(1) As soon as available and in any event within forty-five (45) days after the end of each fiscal quarter of ARCHER, interim balance sheets of ARCHER as of the end of such quarter, statements of income of ARCHER for the period commencing at the end of the previous fiscal year and ending with the end of such quarter, and statements of cash flow of ARCHER for the portion of the fiscal year ended with the last day of such quarter, all in sufficient detail and stating in comparative form the respective figures for the corresponding date and period in the previous fiscal year all prepared in accordance with U.S. GAAP and reviewed by the chief financial officer of ARCHER (subject to normal year end audit adjustments);

(2) As soon as available and in any event within ninety (90) days after the end of each fiscal year of ARCHER, commencing with the fiscal year ending December 31, 2009, balance sheets of ARCHER as of the end of such fiscal year, statements of income and retained earnings of ARCHER for such fiscal year, and statements of cash flow of ARCHER for such fiscal year, with explanatory footnotes in sufficient detail acceptable to the AIA, and stating in comparative form the respective figures for the corresponding date and period in the prior fiscal year and all prepared in accordance with U.S. GAAP and as to the statements and, for the fiscal year ending December 31, 2010 and thereafter, accompanied by an opinion thereon acceptable to the AIA by independent accountants selected by ARCHER and which are acceptable to AIA; and

(3) At the time of creation or acquisition of any subsidiary, ARCHER shall cause such subsidiary to properly become a guarantor of this Note.

(g) Debt. ARCHER shall not create, incur, assume, or suffer to exist any debt, except:

(1) The debt evidenced by this Note;

6

(2)    Indebtedness arising out of the Agreement for Consideration and Royalty Payments Paid to Alzheimer's Institute of America, Inc.;

(3)    Purchase money indebtedness not to exceed $250,000 at any time;

(4)    Current liabilities for taxes and assessments incurred in the ordinary course of business; and

(5)    Indebtedness in respect of current accounts payable or accrued (other than for borrowed funds or purchase money obligations) and incurred in the ordinary course of business, provided that all such liabilities, accounts and claims shall be promptly paid and discharged when due or in conformity with customary trade terms.

(h)    Dividends. Upon the occurrence and during the continuance of an Event of Default, ARCHER shall not declare or pay any dividends; or purchase, redeem, retire, or otherwise acquire for value any of its capital stock now or hereafter outstanding; or make any distribution of assets to its stockholders as such whether in cash, assets, or in obligations of ARCHER; or allocate or otherwise set apart any sum for the payment of any dividend or distribution on, or for the purchase, redemption, or retirement of any shares of its capital stock; or make any distribution by reduction of capital or otherwise in respect of any shares of its capital stock.

(i)    Guaranties, etc. ARCHER shall not assume, guarantee, endorse, or otherwise be or become directly or contingently responsible or liable (including, but not limited to, an agreement to purchase any obligation, stock, assets, goods, or services, or to supply or advance any funds, assets, goods, or services, or an agreement to maintain or cause such Person to maintain a minimum working capital net worth, or otherwise to assure the creditors of any Person against loss), for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposits or collection or similar transactions in the ordinary course of business.

6.    Prepayment. ARCHER reserves the right to prepay the whole or part of the principal sum hereof at any time or from time to time, without premium or penalty.

7.    Miscellaneous.

(a)    Successors and Assigns. The rights and obligations of ARCHER and AIA, as the holder of this Note will be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

(b)    Waiver and Amendment. Any provision of this Note may be amended, waived or modified only upon the written consent of both ARCHER and AIA.

(c)    Fees and Expenses; Costs of Collection. ARCHER agrees to reimburse AIA for all out of pocket expenses of AIA and all reasonable attorneys' fees and expenses incurred by AIA in connection with the preparation, negotiation and execution of this Note (which ARCHER shall pay in full upon the date hereof and which AIA may

offset against amounts paid to ARCHER pursuant to this Note) and the collection and enforcement of this Note. Such expenses include those related to, but not limited to: (i) the administration and enforcement of this Note; (ii) any waiver or amendment of any provision of this Note; (iii) the exercise or enforcement of any of the rights, powers, or remedies of AIA under this Note at equity or at law, whether or not suit is filed; (iv) any workout, refinancing, restructuring, or reorganization of ARCHER, including reasonable attorneys' fees incurred by AIA pursuant to proceedings arising under the Bankruptcy Code or any other applicable federal or state law; and (v) disbursements, appraiser's fees and court costs in the event collection procedures are commenced by AIA.

(d)     Rights and Remedies Cumulative. The rights and remedies of AIA under this Note and as may otherwise be available at law or in equity are cumulative and concurrent and at the sole discretion of AIA may be pursued singly, successively or together and exercised as often as AIA desires.

(e)     Governing Law; Choice of Forum; Waiver of Jury Trial. This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the internal laws of the State of Kansas, excluding its choice of law or conflicts of law principles. In any action between the parties arising out of or relating to this Note or any of the transactions contemplated by this Note: (a) each party irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of either the state courts located in Wyandotte County, Kansas or the United States District Court for the District of Kansas, (b) each party irrevocably consents to service of process by first class certified mail, return receipt requested, postage prepaid, and (c) each party irrevocably waives any and all rights to a trial by jury in any legal proceeding arising out of or related to this Note or the transactions contemplated hereby.

(f)     Notices. Any notice required or permitted hereunder shall be given in writing and shall be conclusively deemed effectively given upon personal delivery or delivery by courier, or five days after deposit in the United States mail, by registered or certified mail, postage prepaid, addressed:

(i)     if to ARCHER, to:
Jerry L. Smith
2040 Whitfield Avenue
Sarasota, Florida 34243
Telephone: (941) 755-6644
Fax: (941) 755-6641

(ii)     if to AIA, to:
William B. Schmidt
7837 Parallel Parkway
Kansas City, Kansas 66112
Telephone: (913) 831-9600
Fax: (913) 831-2391

with a copy to:
Lee Marshall, Esq.
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2135
Fax: (314) 552-8135

or at such other address as ARCHER or AIA may designate by at least ten (10) days' advance written notice to the other party hereto.

(g)     Lost or Stolen Note. Upon receipt of evidence reasonably satisfactory to ARCHER of the loss, theft, destruction or mutilation of this Note and, in the case of loss, theft or destruction, upon receipt of an indemnity reasonably satisfactory to ARCHER (without any surety being required), or in the case of mutilation, upon surrender and cancellation of this Note, ARCHER, at its expense, will make and deliver a new Note, of like tenor, in lieu of the lost, stolen, destroyed or mutilated Note.

(h)     Severability.     If one or more provisions of this Note are held unenforceable under applicable law, the unenforceable provision will be excluded from this Note and the balance of this Note will be interpreted as if such provision were so excluded and will be enforceable in accordance with its terms. The parties to this Note agree to replace any void or unenforceable provision of this Note with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

(i)     Headings; References. All headings used herein are used for convenience only and will not be used to construe or interpret this Note. Except where otherwise indicated, all references herein to Sections refer to Sections of this Note.

(j)     Entire Agreement.     This instrument represents the entire agreement between the parties hereto with respect to this Note and its terms and conditions.

(k)     No Dilution or Impairment. ARCHER shall not amend its articles of incorporation or bylaws or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by ARCHER, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of AIA against impairment.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, ARCHER has caused this Note to be issued as of the date first written above.

ARCHER PHARMACEUTICALS, INC.,
a Delaware corporation

By: _____

Name: _____M. J MULGAH_____

Title: _____BTRH  CFO_____

ELECTRONICALLY FILED
2015 Jul 27 PM 3:38
CLERK OF THE DISTRICT COURTS
CASE NUMBER: 2015-CV-000707

AIA AMEICA, INC.

vs.

ARCHER PHARMACEUTICALS, INC.

**SUMMONS**

To the above-named Defendant/Respondent:

> Archer Pharmaceuticals Inc
> **SERVE: CORPORATION SERVICE COMPANY**
> **2711 CENTERVILLE ROAD, SUITE 400**
> **WILMINGTON, DE  19808**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Louis Jay Wade
> 605 W. 47th Street, Suite 350
> Kansas City, MO 64112

within 21 days after service of summons on you.



Clerk of the District Court

**Documents to be served with the Summons:**
PLE: Petition PETITION ON CONTRACT/NOTE